In re the **BLANTON–SMITH CORPORATION, d/b/a Greenbrier Egg Farms, Greenbrier Feed Mill, and The Blanton Smith Hatcheries, Debtor.**

In re **GRUBBS FARMS, INC., Debtors.**

**Bankruptcy Nos. 380–01019, 380–01020.**

United States Bankruptcy Court, M.D. Tennessee.

Oct. 24, 1984.

Kyle R. Weems, Chattanooga, Tenn., for Thomas E. Ray, Trustee.

Thomas E. Ray, Chattanooga, Tenn., Trustee.

M. Taylor Harris, Jr., Nashville, Tenn., for Nashville City Bank & Trust Co.

Paul E. Jennings, Nashville, Tenn., for Grubbs Farms.

Charles H. Beaty, and L. Wearen Hughes, Nashville, Tenn., for Springfield Production Credit Assn.

William Lamar Newport, and William Caldwell Hancock, Nashville, Tenn., for Waddey & Newport.

Robert P. Ziegler, and Kevin R. Jones, Nashville, Tenn., for Blanton Smith.

C. Kinian Cosner, Jr., Nashville, Tenn., for Unsecured Creditors Committee.

MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a motion filed by six administrative claimants (hereinafter referred to as "claimants") of the preceding Chapter 11 estates requesting that this court order Thomas E. Ray, acting Chapter 7 trustee (hereinafter referred to as the "trustee"), to comply with the confirmed plan of the preceding Chapter 11 cases. The trustee has asserted that he is not bound by the confirmed plan in the preceding Chapter 11 cases or, in the alternative, that the court should reconsider its order confirming the Chapter 11 plan. Upon consideration of the statements of counsel, briefs of the parties and the entire record, this court concludes that the trustee is not bound by the specific provisions of the Chapter 11 plan at issue in this proceeding.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The debtors, Blanton-Smith Corporation and Grubbs Farms, Inc. (hereinafter referred to collectively as the "debtors"), filed voluntary Chapter 11 petitions in this court on April 9, 1980. At the time of filing, the debtors were involved in both the production and the marketing of eggs in Middle Tennessee.

On June 16, 1983, this court confirmed the debtors' plan of reorganization. A number of compromises reached between the trustee and various creditors were incorporated into the final confirmed plan. One such compromise provided that the claimants would waive their right to full payment of their priority administrative expenses on the date of confirmation in return for deferred payment of said claims as well as a perfected security interest in "... all recoveries in all causes of action heretofore or hereafter asserted by the Reorganization Trustee seeking recovery of preferential transfers under 11 U.S.C. § 547." The compromise further provided that the

claimants' security interest "... shall be indefeasible and ... shall be fully recognized in the event of subsequent liquidation of the debtor or debtors."

This court on November 25, 1983, allowed the successor reorganization trustee to exercise his right under the plan to convert these Chapter 11 cases to ones under Chapter 7. 37 B.R. 300. The claimants have argued that the trustee is bound by the terms of the Chapter 11 plan to turn over all proceeds recovered by the Chapter 11 estates pursuant to preference proceedings. The trustee has countered that he is not bound by the terms of the Chapter 11 plan. He acknowledges that the claimants have valid claims for Chapter 11 administrative expenses; however, he asserts that under the specific terms of Chapter 7 of the Bankruptcy Code administrative claims of the Chapter 7 estate take priority over administrative expense claims of a preceding Chapter 11 estate.

### I.

Under a Chapter 7 liquidation, the trustee is directed to distribute property of the estate in accordance with the priorities established under the Code. The Bankruptcy Code, 11 U.S.C. 726(b) (West 1979), specifically provides that administrative expenses incurred under Chapter 7 after conversion have priority over administrative expenses incurred under any other Chapter of Title 11 before conversion.[1] The rationale underlying § 726(b) was aptly stated by Judge Schwartzberg in the case of *In re Codesco, Inc.*, 18 Bankr. 225 (Bankr.S.D.N.Y.1982):

**1.** 11 U.S.C. § 726(b) (West 1979) provides in relevant part:
"...in a case that has been converted to this chapter under section 1112 or 1307 of this title, administrative expenses incurred under this chapter after such conversion have priority over administrative expenses incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under § 543 of this title."

**2.** Section 64a(1) provides in relevant part:
"...Where an order is entered in a proceeding under any chapter of this Act directing

"The super-priority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negated if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case."

*Codesco* at 227.

The courts have recognized the clear mandate of § 726(b) and, accordingly, have consistently afforded Chapter 7 administrative expenses super-priority over the administrative expenses of a preceding Chapter 11 case. *In re Manchester Hides, Inc.*, 32 B.R. 629, 630 n. 2 (Bankr.N.D. Iowa, 1983); *In re New England Carpet Company*, 28 B.R. 766, 770 (Bankr.D.Vt. 1983); *In re Charlie Altman Pontiac-Cadillac-GMC, Inc.*, 23 B.R. 50, 51 (Bankr.N.D. Ala.1982); *In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462, 467 (Bankr.S.D. Cal.1982); *In re Chugiak Boat Works, Inc.*, 18 B.R. 292, 296 n. 6 (Bankr.D.Alaska 1982). This super-priority provision was derived from § 64a(1) of the prior Bankruptcy Act.[2]

According to the legislative history of § 726(b), Congress promulgated § 726(b) as a continuation of the law established under the Act.

"The exception found in the section (§ 726(b)), *which also follows current law*, specifies that liquidation administrative expenses are to be paid ahead of reorganization administrative expenses if

that bankruptcy be proceeded with, the cost and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the schedule and statement required to be filed by Section 238, 378 or 483, shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any;...."

the case has been converted from a reorganization case to a liquidation case, or from an individual repayment plan case to a liquidation case." (emphasis added). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 383 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6339. In light of the similarities between § 64a(1) of the former Bankruptcy Act and § 726 of the Code, the case law under the Act provides persuasive authority in construing § 726 of the Code. See *Central Rubber Products, Inc. v. Stafford Higgins Industries, Inc.*, 31 B.R. 865, 868 n. 3 (Bankr.Conn.1983); *Union Leasing Company v. Peninsula Gunite, Inc.*, 24 B.R. 593, 594 (Bankr. 9th Cir.1982).[3]

In construing § 64(a) of the former Bankruptcy Act, courts have held that equitable considerations could not be substituted for the clear congressional mandate that "administrative costs and expenses in a bankruptcy have priority ahead of unpaid costs and expenses of administration of a superseded debtor-relief proceeding." *Klapper v. Danning (In re Minskoff-Dorman Co.)*, 444 F.2d 516, 517 (9th Cir.1971). See *St. Paul Fire & Marine Insurance Company v. REA Express, Inc. (In re REA Express, Inc.)*, 442 F.Supp. 71 (S.D.N.Y.1977), *aff'd*, 591 F.2d 1332 (2nd Cir.1978); *In re Universal Table Top Co., Inc.*, 10 B.R. 706 (Bankr.E.D.N.Y.1981). Thus, the courts refused to accord priority to administrative expenses from a preceding reorganization based on either a stipulation between the parties to the reorganization or on a court order issued during the reorganization. *Klapper* at 516; *In re Universal*

*Table Top Co., Inc.*, at 706.[4] By refusing to alter the first priority accorded administrative expenses in a liquidation proceeding, courts have recognized the need to ensure the smooth administration of a liquidating estate.

In the present case, the court has found no reason to abrogate the priorities established in § 726(b). The claimants were aware at the time of confirmation that any liquidation proceeding would be governed by Chapter 7 of the Bankruptcy Code. If this court allowed the expenses incurred in the preceding Chapter 11 reorganization to jeopardize the compensation of the trustee in these proceedings, the administration of this liquidation estate would be severely hampered.[5]

## II.

The claimants have argued that the confirmed Chapter 11 plan should be construed as a contract and given effect by the court as the express intention of the parties. *See Official Creditors' Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981). Even if this court were to adopt the claimant's "contract" analysis, it would not hold in their favor.

The claimants have overlooked at least one important principle of contract law. A contract will not be enforced by a court when it is found to be unlawful. See *In re Lloyd Carr & Company*, 617 F.2d 882, 885 (1st Cir.1980); A. CORBIN, CORBIN ON CONTRACTS § 1374, (1952). The

---

**3.** Section 64a(1) was amended in 1952 to provide that the administration expenses of an ensuing liquidation bankruptcy shall have priority over those of the superseded proceedings. The purpose for this amendment was to "...aid to prevent a breakdown in the administration." 3A COLLIER ON BANKRUPTCY § 64.107 at 2109 (14th ed. 1975).

**4.** In the case of *In re Universal Table Top, Co., Inc.*, 10 B.R. 706 (Bankr.E.D.N.Y.1981), the court held that an order allowing priority in a liquidation case for administrative expenses from a preceding reorganization could not be followed in light of the priorities established by Congress in § 64(a). "...The court may not, by

granting a priority which it deems equitable, set aside the clear congressional mandate that no such priority shall be accorded." *Universal Table Top Co., Inc.*, at 709 (quoting *Matter of Columbia Ribbon Co.*, 117 F.2d 999, 1002 (3rd Cir.1941)).

**5.** The claimants in this proceeding have not argued that they were induced to extend additional funds to the debtor in return for a priority position. Although this situation could be adequately dealt with under 11 U.S.C. § 364 (West 1979), it is possible that this court would make an exception to § 726(b) under these circumstances. The court expressly reserves this issue.

compromise the claimants are seeking to enforce is in direct contravention of 11 U.S.C. § 726 (West 1979). Thus, under the established principles of contract law, this court could not enforce the terms of the compromise as sought by the claimants.

Accordingly, this court will fulfill its constitutional duty to enforce the provisions of the Bankruptcy Code. The court, therefore, DENIES the claimant's motion requesting an order directing the trustee to follow the provisions of the Chapter 11 plan requiring a turnover.

IT IS, THEREFORE, SO ORDERED.